UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| UNITED STATES OF AMERICA, | Case No. 2:13-cr-0439-KJD-VCF |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| SEAN FINN, | |
| Defendant. | |

Before the Court are three motions in limine filed by the government (ECF Nos. 448–450). Finn has responded to each motion (ECF Nos. 455–457), and the government has replied (ECF Nos. 467–467). The government's first motion seeks to admit evidence of Finn's flight to Canada in 2013. The government next moves to admit evidence of Finn's failure to file tax returns. Finally, the government moves to admit evidence of Finn's knowledge of co-defendant Joseph Micelli's disbarment.

### I. Background

Finn is charged by indictment with wire fraud, securities fraud, and conspiracy for his role in a fraudulent investment scheme. Three of Finn's co-defendants have pleaded guilty or been convicted after jury trial, and the remaining co-defendants are still at large. According to the government, Finn and his co-defendants operated an intricate investment scheme that relied upon a third-party entity—called the Malom Group—to provide investor-victims access to high yield investment opportunities. The scheme was billed as a joint venture between the investor and Malom Group. The investor would essentially buy in with a large initial deposit, and once they bought in, Malom Group would also pay into the venture. The problem was that Malom Group did not have the resources or the access to lucrative investments that the defendants advertised, and the investors lost millions of dollars. Meanwhile, the various defendants

pocketed the investors' contributions. Finn's alleged part in the scheme was to connect potential investors with Malom Group and to reinforce Malom's viability and financials.

The FBI and SEC began investigating Malom Group and the various defendants in 2013. The SEC served subpoenas for testimony and documents on Finn and the others. Finn complied with the subpoena and provided the SEC his personal financial history, a list of Malom Group investors, and information on his income from the scheme. The SEC and FBI investigation culminated in December of 2013, with a twenty-four-count indictment against Finn and four additional defendants. The indictment charged Finn with wire fraud, securities fraud, and conspiracy.

Though Finn was indicted in December of 2013, he was not arrested until August of 2018, when he was extradited from Canada. Finn's trial is scheduled for January 27, 2020, and the government now moves in limine to admit evidence of Finn's flight from prosecution, his failure to file tax returns during the investment scheme, and his knowledge of co-defendant Joseph Micelli's disbarment.

**II.     Legal Standard**

A motion in limine is a request for the Court's guidance on an evidentiary dispute before trial. United States v. Heller, 551 F.3d 1108, 1111–12 (9th Cir. 2009). Generally, these motions seek to determine questions of foundation, relevancy, and potential prejudice. Id.; Hawthorne Partners v. AT&T Tech., Inc., 931 F. Supp. 1398, 1400 (N.D. Ill. 1993). Though the Federal Rules of Evidence do not explicitly authorize motions in limine, the Court's inherent authority to manage the trial authorizes these pre-trial evidence determinations. Luce v. United States, 469 U.S. 38, 41 n.4 (1980). The motions may seek to proactively exclude evidence or admit evidence before trial. Yet, the Court's initial determine is not binding, and the Court is free to amend its evidentiary rulings later. Ohler v. United States, 529 U.S. 753, 758 n.3 (2000). Indeed, the Court enjoys broad discretion in ruling on pre-trial evidentiary issues. Jenkins v. Chrysler Motors Corp., 316 F.3d 663, 664 (7th Cir. 2002).

**III. Analysis**

Each of the government's motions seeks to admit evidence. Finn has responded to each motion, but he has not filed any of his own motions to admit or exclude evidence. The Court will analyze each of the government's motions in the order they were filed.

*A. Evidence of Finn's Flight from Prosecution*

First, the government seeks to admit evidence of Finn's flight to Canada to demonstrate consciousness of guilt. Finn counters that there are several legitimate reasons for his family's move to Canada that do not stem from consciousness of wrongdoing. Generally, evidence of flight is admissible to show consciousness of guilt and guilt itself. United States v. Harris, 792 F.2d 866, 869 (9th Cir. 1986). The relevance and overall value of flight evidence is for the Court to determine, and its admission is an implicit approval of its relevance and materiality. Id. Flight evidence is admissible if there is an unbroken series of inferences from the defendant's behavior to the defendant's guilt. United States v. Silverman, 861 F.2d 571, 581 (9th Cir. 1988). Four inferences are necessary: an inference from (1) the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt for that particular crime; (4) from consciousness of guilt for that crime to actual guilt of the charged crime. Id. If those inferences are present and unbroken, evidence of flight is admissible.[1]

Here, there is sufficient evidence to support that Finn had notice that the SEC and FBI were investigating him for his part in the investment scheme. Before Finn left the country, he had been subpoenaed and had testified before the SEC. During that time, federal agents made Finn aware that they were investigating the investment companies and that Finn's actions within the scheme could have been illegal. Finn then left for Canada. Shortly thereafter, the government issued a press release that publicly disclosed the investigation and charges against Finn. An agent also emailed Finn to personally notify him of the pending charges and the warrant for Finn's arrest. Finn did not respond. Instead, Finn reached out to several others involved with the investment scheme to ascertain the scope of the investigation against him. This evidence

---

[1] The Court will also consider the immediacy of the defendant's flight. Silverman, 861 F.2d at 581. However, immediacy is less important to the analysis where a defendant knows that he has been accused of a crime. United States v. Hernandez-Miranda, 601 F.2d 1104, 1106–07 (9th Cir. 1979).

supports that Finn was aware he was under investigation for his involvement with Malom Group. Finn's decision to flee to Canada and remain there despite knowing of the indictment and arrest warrant is evidence of his consciousness of guilt.

Also supporting admission of this evidence are the unusual circumstances under which Finn moved to Canada. Finn, his wife, and two minor children were staying with friends in Whitefish, Montana immediately before their move to Canada. The Finns crossed the border on Friday, November 22, 2013. Finn did not notify his children's schools that they would be moving and did not leave a forwarding address. As a result, his children accrued several unexcused absences. Once the Finns arrived in Canada, Finn's purchase history was evasive. Finn paid for several hotels with cash, purchased a new cell phone, and transferred the majority of his bank account to a Canadian bank. Finn then rented an apartment and leased a mailbox at a Canadian UPS store on a year-long lease. During that time, Finn continued to contact other co-conspirators and sought advice on how to answer investigators' questions. The totality of the evidence points toward Finn fleeing an investigation across the border, and there is very little evidence to support a legitimate or benign reason for his family's move to Canada.

Accordingly, the Court grants the government's motion in limine and will admit evidence of Finn's flight from prosecution.

*B. Evidence of Finn's Failure to File Tax Returns*

Next, the government moves to admit evidence of Finn's failure to file income tax returns during his involvement with the scheme. The government also seeks to admit evidence that Finn's co-defendants, Brandel, Warras, and Micelli failed to file income tax returns on behalf of their entity M.Y. Consultants. The government claims that the evidence is admissible because it is inextricably intertwined to Finn's participation in the scheme. Alternatively, the government argues that Finn's failure to file his taxes shows consciousness of guilt under FRE 404(b). Finn counters that the evidence is not admissible under FRE 404(b) because it is more prejudicial than probative.

As for Finn's failure to file his own tax returns, the Court finds that the evidence is admissible. According to the government, Finn received around $830,000 in payments from

M.Y. Consulting between April 2010 and September 2011. Yet, Finn did not file a federal income tax return in 2009, 2010, or 2011.

Rule 404(b) generally prohibits evidence of a defendant's bad acts that merely demonstrate a propensity to break the law. FRE 404(b). However, those bad acts may be admissible if (1) they were inextricably intertwined with the defendant's charged conduct or (2) they are offered for another purpose like showing motive, intent, knowledge, or absence of mistake or accident. FRE 404(b)(2). Here, Finn's failure to file his tax returns is admissible under either of Rule 404(b)(2)'s prongs.

First, Finn's refusal to file a tax return while he was involved with Malom Group is intrinsic evidence that Finn received illegitimate payments from a fraudulent scheme. Evidence of other bad acts that are inextricably intertwined with the charged offense are "independently admissible and [are] exempt from the requirements of Rule 404(b)." United States v. Anderson, 741 F.3d 938, 949 (9th Cir. 2013). An uncharged bad act is sufficiently intertwined with the charged conduct if it is "part of the transaction that serves as the basis for the criminal charge" and is vital to the prosecution's ability to "offer a coherent and comprehensible story regarding the commission of the crime." Id. Timing is key. If the uncharged bad act is too far removed from the charged conduct, it cannot be inextricably intertwined. Id.

The evidence here shows that Finn's refusal to report the income derived from the investment scheme is part of the overall fraudulent transaction and necessary for the prosecution to present a cogent story of Finn's actions. The basis of the charges against Finn is that he induced victims to invest in a nonexistent investment program and profited from their investments. Failure to report ill-gotten gains is a component of the overall fraud scheme even if the defendant is not charged with tax evasion. See e.g., United States v. Taylor, 239 F.3d 994, 999–1000 (9th Cir. 2005) (district court did not err in admitting evidence of failure to file tax returns for income derived from prostitution). Therefore, the evidence of Finn's failure to file tax returns is inextricably intertwined with the fraud claims against him and is independently admissible.

Second, even if Finn's failure to file tax returns was not independently admissible, it

would still be admissible as evidence of Finn's consciousness of guilt. During the time Finn was allegedly connected to Malom Group, he collected nearly 1 million dollars. He did not report that income to the IRS. Admittedly, Finn later paid the IRS $100,000, but that payment did not include an accounting of his income or disclose the extent of his involvement with Malom Group. It follows that an individual involved in a scheme like this one would avoid reporting income to the IRS. The lack of tax returns is probative of Finn's intent to conceal his income.

Finn's argument that his failure to file tax returns should be excluded because it is more prejudicial than probative is unavailing. The Court will exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." FRE 403. Importantly, because Rule 403 deals with relevant evidence, the Court will only exclude it if the danger of prejudice *substantially* outweighs its probative value. Id. Thus, as the evidence's probative value increases, the danger of unfair prejudice must also rise to substantially outweigh the probative value. That is not the case here. Finn alleges that admission of this evidence may cause the jury to form a negative impression merely because he did not file his taxes and instead paid a large sum to the IRS. D.'s Resp. 4, ECF No. 457 ("It could be seen as the careless act of a wealthy person"). However, these risks do not substantially outweigh the probative value of Finn's intent to conceal his income from the investment scheme. As a result, Rule 403 does not exclude the evidence of Finn's failure to file tax returns.

The failure of Finn's co-defendants to file tax returns on behalf of M.Y. Consultants, however, is inadmissible. The government moves to admit evidence of Finn's co-defendants' failure to file tax returns on behalf of M.Y. Consultants. The government states "the absence of any corporate tax filings during the relevant period is probative of the fact the M.Y. Consultants, whose bank account was registered to Anthony Brandel, was not a legitimate company but was instead a shell through which defendant and his co-conspirators funneled victim funds." Mot. in Limine 5, ECF No. 449. While that may be true, Finn was not an owner or member of M.Y. Consultants, and he had no control over whether Brandel or any other co-defendant filed those returns. Finn merely received payments from M.Y. Consultants. Thus, the probative value of M.Y. Consultants' failure to file has little bearing on Finn's conduct in this case. The risk of

admitting this evidence is that the jury could impose upon Finn some duty or responsibility to file taxes on M.Y. Consulting's behalf—something he could not reasonably have done.[2]

Accordingly, the Court grants in part and denies in part the government's motion in limine to admit evidence of Finn's failure to file tax returns. As for Finn's personal tax returns, the Court finds that his failure to file is inextricably intertwined with the overall fraud scheme. That evidence is therefore admissible. As for Finn's co-defendants' failure to file tax returns on behalf of M.Y. Consulting, the Court finds that the risk of unfair prejudice substantially outweighs the probative value. Therefore, the failure of M.Y. Consultants to file tax returns is inadmissible.

## C. Evidence of Finn's Knowledge of Joseph Micelli's Disbarment

Last, the government moves to admit evidence that Finn represented to prospective investors that Joseph Micelli was Malom Group's compliance officer, despite knowing that Micelli had been disbarred in California. The government argues that Finn bolstered Malom Group's image and financial viability by, among other things, representing to investors that attorney Joseph Micelli was the entity's compliance officer. In that position, Micelli was allegedly responsible for ensuring that Malom Group's various investment packages complied with state and local law. However, the California State Bar had disbarred Micelli years earlier. Thus, the evidence is relevant as to whether Finn knowingly and willfully defrauded investors.

The Court admitted the same evidence earlier in this case against Finn's co-defendants. See Order, ECF No. 167. There, the Court found that knowledge of Micelli's disbarment "tends to establish an element of the charged offense, i.e., intent, knowledge and/or absence of mistake." Id. The Court also found that "the probative value of this evidence is not outweighed by the danger of unfair prejudice." Id. The Court sees no reason to hold differently here. Finn's knowledge of Micelli's disbarment, coupled with promoting Micelli as Malom Group's compliance officer, tends to show that Finn knew that Malom Group was not a legitimate business. Therefore, the Court grants the government's motion in limine and will admit evidence

---

[2] The Court notes that evidence of Finn's knowledge that M.Y. Consultants was not filing tax returns may be admissible to show that Finn was aware that the entity was illegitimate. However, as far as the Court can tell, that is not the evidence the government seeks to admit here.

of Finn's knowledge of Micelli's disbarment.

### IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that the government's motion in limine to admit evidence of Finn's flight from prosecution (ECF No. 448) is **GRANTED**;

IT IS FURTHER ORDERED that the government's motion in limine to admit evidence of non-filing of tax returns (ECF No. 449) is **GRANTED IN PART** and **DENIED IN PART**. The government may introduce evidence of Finn's failure to file income tax returns, but evidence that M.Y. Consultants failed to file tax returns is excluded;

IT IS FURTHER ORDERED that the government's motion in limine to admit evidence of Finn's knowledge of Joseph Micelli's disbarment (ECF No. 450) is **GRANTED**.

Dated this 23rd day of January, 2020.

_____
Kent J. Dawson
United States District Judge